## REASNER, ADMINISTRATOR, *v.* BOHNE.

[No. 10,614.   Filed January 25, 1921.   Rehearing denied April 28, 1921.   Transfer denied June 9, 1921.]

1. GIFTS.—*Gift Inter Vivos.*—*Requisites.*—A gift *inter vivos* of personal property is the voluntary act of transferring the right to and the possession of a chattel, whereby one person renounces and another acquires immediate right and title thereto. p. 118.

2. GIFTS.—*Gifts Inter Vivos.*—*Promise to Make.*—*Validity.*—An agreement or promise to make a gift is void as being without consideration.   p. 118.

3. GIFTS.—*Gifts Inter Vivos.*—*Requisites.*—*Surrender of Control.*—*Title.*—To make a valid gift *inter vivos* there must be both an intention to give and a stripping of the donor of all dominion or control over the thing given, and the change of title must be irrevocable.   p. 118.

4. GIFTS.—*Gifts Inter Vivos.*—*Requisites.*—*Delivery.*—Words alone, unaccompanied by delivery are not sufficient to constitute a gift, except where the gift is already in the possession of the donee.   p. 119.

5. GIFTS.—*Gifts Inter Vivos.*—*Requisites.*—*Delivery.*—The delivery of a gift must be of possession, of the dominion and control of the property, and the transfer must be so complete that, if the donor again assumes control over the property without the consent of the donee, he becomes liable as a trespasser. p. 119.

6. GIFT.—*Gift of Promissory Note.*—*Requisites.*—*Delivery.*—In order that there may be a gift of a promissory note, there must be a delivery of the paper, but such a gift may be made by having the note made payable to a third person, and completed as to delivery by having the security recorded.   p. 119.

7. GIFTS.—*Gift Inter Vivos.*—*Delivery.*—*Evidence.*—*Sufficiency.* —In an action against an administrator to recover an amount paid on a note which a third person claimed as a gift from the administrator's decedent, who had the note made payable to such third person, evidence *held* insufficient to support a finding that the note was ever delivered to the third person or that decedent parted with dominion over it.   p. 122.

From Marion Probate Court (1,111) ; *Mahlon C. Bash,* Judge.

Action by William Bohne against Edward H. Reasner, Administrator of the estate of Ellen C. Holtman,

deceased, James L. Mitchell and others. From a judgment for plaintiff, the defendants named appeal. *Reversed.*

*James L. Mitchell* and *Fesler, Elam & Young,* for appellants.

*Frank T. Brown* and *Theodore F. Vonnegut,* for appellees.

McMahan, J.—Complaint by William Bohne, hereinafter designated as appellee, to recover $103.60, alleged to have been paid through mistake to appellant Reasner, as administrator of the estate of Ellen C. Holtman. The complaint alleges that in September 1912, he signed a certain promissory note calling for $100, which was made payable to Elonore Nolting; that appellant, through his attorney, wrote a letter to appellee to the effect that he as administrator of said estate had certain notes given by appellee to Mrs. Holtman, one being for $100; that relying upon the statement of said letter he paid appellant the amount demanded on said $100 note, to wit, $103.60; that he never executed such note to Mrs. Holtman and was not indebted to said estate on said note, but that when he so paid said money to appellant he thought said note was payable to Mrs. Holtman and was ignorant of the fact that it was in fact made payable to Miss Nolting; that Miss Nolting claimed that she was the owner of said note and demanded that appellee pay the amount due thereon to her; that appellee had demanded repayment of the sum so paid to appellant and a refusal of appellant to repay.

Miss Nolting was made a defendant to answer as to her interest in said note. She filed a cross-complaint alleging that she was the owner of said note and asking for possession of the same.

The cause was tried by the court and resulted in a judgment against the appellant in favor of appellee

Bohne, for $103.60, the amount which he had paid appellant and in favor of Miss Nolting, that she was the owner and entitled to possession of said note, and ordering that the clerk with whom it had been deposited should deliver it to her.

Appellant contends that the decision of the court is not sustained by sufficient evidence.

The facts are in substance as follows: September 8, 1912, appellee borrowed $100 of Ellen C. Holtman, this loan was evidenced by a promissory note which at the request of Mrs. Holtman was made payable to Elonore Nolting, but which at the time of its execution was delivered to Mrs. Holtman, who died, and appellant Edward H. Reasner is administrator of her estate. The interest on said note was paid 1913, 1914, 1915 and 1916 to Mrs. Holtman. The indorsements showing such payments in 1913 and 1916 are in the handwriting of Mrs. Holtman while the indorsement for the years 1914 and 1915 are in the handwriting of Miss Nolting, the payee named in the note. This note was delivered to Mrs. Holtman at the time of its execution and so far as shown by the evidence remained in her possession until about three weeks before her death. About two months before her death she gave a bundle of papers not including the note in question to a stepson, telling him to take care of them until she wanted them again. About three weeks before her death and while she was sick and confined in her bed, this stepson visited her. At this time she had some papers, including the note in question, under her pillow. Appellant Reasner was present at that time and in a conversation with Mrs. Holtman, who was his mother, said that if this stepson had any papers in his keeping he should have all of them. Mrs. Holtman then told her stepson to take the papers she had under her pillow, which he did. He took these papers, including the note in question, home

with him and put them with the other papers which he had theretofore received from Mrs. Holtman. After Mrs. Holtman's death all of these papers were delivered to Reasner, administrator of her estate. Among the papers so delivered, in addition to the $100 note, there were two other notes signed by the appellee, Bohne: One for $250, payable to Elonore Nolting and one for $40, payable to Mrs. Holtman. Also four notes of Carl Nolting, three aggregating $1,350, payable to Mrs. Holtman and one for $500, payable to Elonore Nolting, and a certificate of stock in the Citizens Gas Company issued to Mrs. Holtman as trustee for Elonore Nolting. Mrs. Holtman was godmother of Elonore Nolting, and had told this stepson and others that she was going to give her "around $500." She also said that she was going to leave money to different parties. She afterwards talked about making a will but never did so.

Later she complained to others about the treatment she had received from the Nolting family, and stated that she had given them all she was going to give them. After the death of her first husband and prior to her marriage to Mr. Holtman in 1900, she resided in the Nolting home, she and the Nolting family being at that time intimate friends. She could not write any English and could read but little. Miss Nolting as a child had assisted her in many ways, such as going on errands, writing receipts for rent and taking the money for rent when Mrs. Holtman was not present, etc. Miss Nolting was twenty-six years of age at the time of this trial in 1918. She was a sister to appellee's wife, and, having died since the cause was tried, her administrator is named as one of the appellees. Miss Nolting was not present when the note in question was executed, and there is no evidence that she ever saw it or had possession of it during the lifetime of Mrs. Holtman, other

than can be inferred from the fact that the payments of interest, as before stated, are indorsed on the note in her handwriting.

In February 1917, the appellant as administrator, through his attorney, wrote a letter to Mr. Bohne stating the amount due on each of the three notes signed by the appellee. In April 1917, appellee went to the attorney's office and told him that he wanted to pay the $100 note. Appellee at the time thought that the note was payable to Mrs. Holtman. He then paid the sum due on the note, $103.60, to the attorney and received the note. This payment was made by check $96.85 belonging to his wife, Maria Bohne, and $6.65 in cash.

After this payment was made, Elonore Nolting claimed that this $100 note belonged to her and informed appellee that she would like to have the money. Two days after making said payment appellee returned to the office of said attorney and demanded the return of the amount he had paid on the note.

Appellants insist that the evidence in this case wholly fails to show that the note in question was ever delivered to Miss Nolting. His contention being that in order to make a valid and effective gift *inter vivos* there must be an intention to transfer title, a delivery by the donor and an acceptance by the donee.

A gift *inter vivos* of personal property may be defined as the voluntary act of transferring the right to and the possession of a chattel, whereby one person renounces, and another acquires immediate right and title thereto. It cannot be made to take effect in the future. *Walsh's Appeal* (1888), 122 Pa. St. 177, 15 Atl. 470, 1 L. R. A. 535, 9 Am. St. 83. An agreement or promise to make a gift, being without consideration, is void. *Minor* v. *Rogers* (1873), 40 Conn. 512, 16 Am. Rep. 69. There

must be both an intention to give and a stripping of the donor of all dominion or control over the thing given. *Stevenson* v. *Earl* (1903), 65 N. J. Eq. 721, 55 Atl. 1091, 103 Am. St. 790, 1 Ann. Cas. 49. The change of the title is and must be irrevocable. *Smith, Admr.,* v. *Dorsey* (1872), 38 Ind. 451, 10 Am. Rep. 118. Words alone, unaccompanied by delivery, are not sufficient to constitute a gift, except where the gift is already in the possession of the donee. *Miller* v. *Neff* (1889), 33 W. Va. 197, 10 S. E. 378, 6 L. R. A. 515. The delivery must be of possession, of the dominion and of the control of the property. The transfer must be so complete that, if the donor again assumes control over the property without the consent of the donee, he becomes liable as a trespasser. And so essential is delivery as a factor in the transaction that it has been said: "Intention cannot supply it; words cannot supply it; actions cannot supply it. It is an indispensable requisite, without which the gift fails, regardless of the consequences." *Liebe* v. *Battmann* (1898), 33 Ore. 241, 54 Pac. 179, 72 Am. St. 705. In order that there may be a gift of a promissory note, there must be a delivery of the paper. *In re Crawford* (1889), 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71. Such a gift may also be made by having the gift made payable to a third person, and completed as to delivery by having the security recorded. Note: 75 Am. St. 434.

The appellee does not controvert the contention of appellant or the law applicable thereto, but contends that the evidence shows a constructive delivery, and cites 8 Am. and Eng. Ency. of Law (1st ed.) 1323, to the proposition, that under some circumstances, where all of the requisites of a gift are present, the donor may by declaration or otherwise constitute himself trustee of the property for the benefit of the donee; and that, in

order to do this, it is only necessary for the donor in clear and unequivocal language, or by acts amounting to the same, to declare that he holds the property as trustee for the donee. While a trust, however, will not be imputed where none was in contemplation, and an imperfect gift will not be given effect by construing it as declaration of trust so as to be valid without delivery. *Trubey* v. *Pease* (1909), 240 Ill. 513, 88 N. E. 1005, 16 Ann. Cas. 370; *Weaver* v. *Weaver* (1899), 182 Ill. 287, 55 N. E. 338, 74 Am. St. 173.

In *Williamson* v. *Yager* (1891), 91 Ky. 282, 15 S. W. 660, 34 Am. St. 184, the payee of certain promissory notes had assigned them, by written indorsement on the notes, and declared that she held them for assignees, afterwards, with the consent of all the parties, the assignments were erased to allow the assignor to sue, for the benefit of the assignees, and after judgment was obtained it was regarded as belonging to the assignees. The assignor retained possession of the notes, and treating the assignment as without consideration, it was held that the gift was complete and effectual. The court saying: "If one delivers possession of personal property to a trustee to hold as a gift for the donee, it is certainly a valid gift, and if he expressly says, or does acts amounting to the same thing, that he constitutes himself a trustee to hold the property for the donee, we perceive no reason why this should not be as valid and binding as a delivery of the property to a third person, to be held in trust for the donee."

In *Barnhouse* v. *Dewey* (1910), 83 Kan. 12, 109 Pac. 1081, 29 L. R. A. (N. S.) 166, it is said: "Where a donor decides to give to another a certificate of shares in a building and loan association and to make the payments for the donee until maturity, and causes such certificate to be issued in the name of the donee, retaining possession thereof himself, and makes the subse-

quent payments thereon in the name of the donee, but at all times regards the certificate as the property of the donee and his possession as trustee of such donee, the delivery to himself as trustee of the donee will be held sufficient to complete the gift."

But the Supreme Court of this state, in *Hatton* v. *Jones* (1881), 78 Ind. 466, where the facts are similar to the facts in this case, in speaking of a constructive delivery said: "We do not think that a person could appoint himself as trustee and then make a valid delivery of his own property to himself as such trustee; or that an intention or promise to give would make a perfected gift so as to constitute the intender or promisor a trustee for the use of the intended or promised beneficiary. * * * It is not insisted that there was an actual delivery of the note, and from the evidence, we do not think there was any constructive delivery of it, and it is admitted that without a delivery there could be no perfected gift."

As we view the evidence in this case it is not necessary for us to determine whether a donor can make a delivery to himself as trustee for the donee, but we do hold that the evidence wholly fails to show such delivery.

If there was a gift of the note in question to Miss Nolting, When did it take place? Why did the donor keep it in her possession? Why did she collect and retain the interest on the same? Why did she deliver it to her stepson without any direction that he should deliver it to Miss Nolting? She had prior to the time given him other papers with the direction to keep them until she called for them. When during her last illness her son called attention to the fact that the stepson had some of her papers and suggested that she turn all her papers over to the stepson, she readily did so without further directions being given.

Measured by the requirements of the law, we hold that the evidence in this case is not sufficient to support a finding that the note in question was ever delivered to Miss Nolting. There is absolutely no evidence to show that Mrs. Holtman ever parted with dominion over it. See *Hayes* v. *McKinney* (1920), 73 Ind. App. 105, 126 N. E. 497; and *Fanning* v. *Russell* (1880), 94 Ill. 386.

Judgment reversed, with direction to grant appellants a new trial and for further proceedings consistent with this opinion.