KRAUS v. KRAUS, EXECUTOR, ETC. ET AL.

[No. 29,400. Filed March 17, 1956. Rehearing denied April 18, 1956.]

*Allen & Allen,* of South Bend, for appellant.

*Richard C. Kaczmarek,* of South Bend, for appellees.

EMMERT, J.—This appeal is from a judgment entered upon special findings of facts and conclusions of law that the sum of $18,000 held by John Kraus constituted assets of the estate of Rudolph Kraus, deceased, and that John Kraus be ordered to deliver the $18,000 to the executor of decedent. The error assigned here is the overruling of appellant's motion for a new trial. The motion for a new trial charged the decision was not sustained by sufficient evidence, and was contrary to law.

Rudolph Kraus died testate December 9, 1952, at his residence on LaPorte Avenue in South Bend. He had been a widower for twenty years and left no children. Appellant was his brother, and children of other deceased brothers were also heirs at law.

On April 27, 1950, decedent, in company with his brother, John Kraus, went to a law office and there executed a will. He had been in ill health for approximately a week before this time, and had been attended by his brother who stayed with him during his illness. About a year before this time he had been the victim of an attempted robbery by two men who came to his house, attempted to find where he kept his money and rob him, and in the ensuing struggle he sustained cuts on his head caused by a blackjack that was used by one of the robbers. Police were called and he was taken to a hospital where his wounds were stitched and

treated. At the suggestion of his brother and his wife he installed a telephone so that they could call each other every day.

For some time the decedent had kept large sums of money about the house, and the evening after the will was executed he and his brother returned to the house, where the decedent handed a large round oatmeal box containing $18,000 in currency to his brother, John Kraus. The lid was sealed with tape, and the brother testified he never opened the box during the lifetime of the decedent. There is a conflict in the testimony as to what was said by the parties when the box was handed over, and upon how this evidence is interpreted depends the outcome of this appeal.

When an issue concerning the credibility of witnesses or the weight of the evidence is presented for our determination on appeal, we should carefully avoid any tendency to place ourselves upon the trial bench and usurp the functions of the trial judge. We are dealing with a cold record and cannot observe the witnesses, their conduct, and manner of testifying while on the witness stand.

The weight of the evidence does not depend upon the greater number of witnesses who may testify upon any proposition or issue. *Cottrell et al.* v. *Shadley* (1881), 77 Ind. 348, 353.[1] "On appeal we are not in a position to determine the credibility of the witnesses, and we only consider the evidence, together with the reasonable inferences that may be drawn therefrom, which tend to support appellee's

---

[1] "There was a conflict of testimony. One woman contradicted three men. It was for the jury to determine whether the woman or the men ought to be believed; and this court can not interfere with their determination, where the question is merely as to the preponderance of the testimony. *Lane* v. *Clodfelter*, 67 Ind. 51." *Cottrell et al.* v. *Shadley* (1881), 77 Ind. 348, 353.

claim. *F. W. Woolworth Company* v. *Moore* (1943), 221 Ind. 490, 48 N. E. 2d 644, *supra." Robertson Bros. Dept. Store* v. *Stanley* (1950), 228 Ind. 372, 379, 90 N. E. 2d 809.

The same rule applies to conflicts in the testimony of any witness.

"In considering the question presented we may not weigh the testimony of one witness against the conflicting testimony of another, *nor may we weigh conflicting portions of the testimony of the same witness. If the same witness makes contradictory assertions, we will not undertake to determine which of the assertions are true,* that being a question for the jury. All facts which the evidence tends to prove and all inferences reasonably deducible therefrom must be accepted as true against the moving party. *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941), 110 Ind. App. 1, 37 N. E. 2d 5; *Snider* v. *Truex* (1943), 222 Ind. 18, 51 N. E. 2d 477." (Italics added.) *Hummell* v. *New York Cent. R. Co.* (1946), 117 Ind. App. 22, 25, 66 N. E. 2d 901.

See also *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769, where we held the credibility of self-serving statements in a confession was for the jury.

The trial court correctly concluded there was no gift *causa mortis.* The transfer was not made when decedent was in peril of death or while he was under the apprehension of impending dissolution from an existing malady, nor did the donor die without recovery. *Bulen* v. *Pendleton Banking Co.* (1948), 118 Ind. App. 217, 231, 78 N. E. 2d 449.

The trial court concluded there was no valid gift *inter vivos.* The Appellate Court, in the Bulen case, *supra,* well states the law on a gift *inter vivos* as follows:

"A gift *inter vivos* of personal property or a chose in action is a voluntary act of transferring the right to and the possession of such chattel or chose in action whereby one person renounces and another acquires the immediate right and title thereto. An agreement, intention, or promise to make a gift effective in the future is void as being without consideration. To make a valid gift *inter vivos* there must be both an intention to give and a stripping of the donor of all dominion or control over the given thing and a change of title must be irrevocable. Words alone, unaccompanied by the delivery of immediate possession, are not sufficient to constitute a gift *inter vivos,* except where the gift is already in the possession of the donee. The transfer must be so complete that, if the donor again attempts to assume control of the property, without the consent of the donee, he becomes liable as a trespasser. *Reasner, Admr.* v. *Bohne* (1921), 76 Ind. App. 114, 118, 119, 129 N. E. 490; *Michael* v. *Holland* (1942), 111 Ind. App. 34, 39, 40, 40 N. E. 2d 362." (Pages 230, 231.)

From the testimony of the witness Earl McCrum, who was a son-in-law of the brother John Kraus, the trial court was authorized in finding there was no gift. A portion of his testimony is as follows:

"Q When this box was handed to John Kraus did you hear any conversation at the time Rudolph handed it to John?

A No; the only words I heard—'Here, John, is the box. Take it home with you'.

Q That is all you heard?

A Yes.

. . . .

Q 'Here is the box. You take it with you'. That is all he said?

A Yes.

. . . ."

Pauline McCrum, a daughter of John Kraus, testified in part as follows:

"Q  Try to recall everything that might have been said by Rudolph or John or you or your husband or anybody else in this place at the time this box was passed.

A  All I can remember, my uncle gave it to my dad.  He said, 'Take this with you'."

A mere statement "take this with you" accompanied by transfer was not sufficient to establish the fact of a gift. And notwithstanding other testimony given ▮ by the witnesses regarding statements made by decedent at the time of the transfer of the box containing the money, the trial court had a right to believe that the above testimony actually recited "everything that might have been said . . . at the time." In adopting this belief the court could reasonably have taken into consideration the relationship of the witnesses to the appellant and to assume therefrom that they would attempt to help him all they could.

John Kraus testified in part that after he took the box home, the decedent came to his house several times on Sundays and holidays and asked for the box, which was handed to him, and he took the box into a bedroom, opened the box, looked at the money and put it back in the box and left it on the bed. He further testified as follows:

"Q  Weren't you curious to know whether or not he had taken any money out of it?

A  It was none of my business if he took the money out of it.

MR. ETTL: Just answer the question Yes or No.

BY MR. KACZMAREK.

A  No.

Q  You weren't curious about it?

A  No.

Q  Assume that he did take some money out of it, would you have made any objection to it?

A  No.

Q  Even though it was your money.
A  No.
Q  You still wouldn't have objected?
A  No.
Q  Well then, is it not possible that you felt it was still his money?
A  No.
Q  You felt it was yours?
A  Yes.
Q  But you felt at the same time that he could take any amount that he wanted to?
A  He was my brother.  I didn't care."

It was within the province of the trial court to disbelieve the self-serving answers given by John Kraus and from this testimony viewed in its entirety, to draw the inference that John understood the money was not a gift, and that his brother Rudolph had the right to take any of it that he cared to.

Moreover, it was logical and reasonable for the trial court to infer that the decedent would not execute a will disposing of his property, and within a matter of a couple of hours give away the major portion of his estate.  It was also proper for the court to draw the inference that the decedent, in view of his recent illness and the prior attempted robbery, became afraid he could not safely keep the money, so he transferred the custody of it to his brother, whom he had named as executor, in order to avoid losing the money by another robbery.  The decedent's acts in inspecting and counting the money several times were consistent with the inference that the decedent still regarded it as his property merely left in the custody of his brother John for safe-keeping.

Judgment affirmed.

Arterburn and Achor, JJ., concur.

Bobbitt, C. J., dissents with opinion in which Landis, J., concurs.

### DISSENTING OPINION

BOBBITT, C. J.—I dissent from the majority opinion because I believe the Appellate Court reached the right result on the record before them.

The majority opinion states that there is a conflict in the testimony as to what was said by the parties when the box was handed over by the deceased to his brother.

I have carefully examined the evidence in the transcript and in my opinion there is no conflict in the evidence pertaining to the gift *inter vivos* within the meaning of that term as ordinarily and customarily understood.

I would deny transfer.

Landis, J., concurs.

NOTE.—Reported in 132 N. E. 2d 608.