ELY *v.* CITY OF MONTPELIER.

[No. 1068A181. Filed December 19, 1969.]

*David C. Mosier,* of Portland, for appellant.

*Peterson, Ervin & Barry,* of Hartford City, for appellee.

COOPER, J.—This matter comes to us from the Blackford Circuit Court wherein said Court sustained the decision of the Board of Public Works and Safety of the City of Montpelier, Indiana, which Board, after notice and hearing, dismissed the appellant from the police force of the city of Montpelier.

The record before us reveals that the appellant was appointed to the Montpelier Police force on December 1, 1958, and that he remained an active member thereof until April 5, 1967, at which time he was dismissed by the Board of Public Works and Safety.

The record further reveals that on March 23, 1967, the Board of Public Works and Safety (hereinafter referred to as board) caused to be served upon the appellant certain averred charges of alleged misconduct together with a notice of hearing on said charges.

The pertinent parts of said charges and notice to the appellant are as follows:

## "NOTICE TO HARRY ELY

"You are hereby notified that on the 5th day of April, 1967, at 8 o'clock P.M. in the Council Room in the City Hall of Montpelier, Indiana, the Board of Public Works and Safety will hold a hearing to ascertain whether or not Harry Ely should be dismissed from the Police Force of the City of Montpelier, Indiana, as a result of charges filed against such officer by the Chief of Police of the City of Montpelier charging him with gross neglect of duty and incapacity to perform the office of police officer of the City of Montpelier and neglect and disobedience of orders.

"SIGNED AND DATED this 23rd day of March, 1967."

## "REQUEST FOR DISMISSAL

"Comes now Frank Powell, Chief of Police of the City of Montpelier, Indiana, and says that Harry Ely should, after hearing, be dismissed from the Police Force of the City of Montpelier, Indiana, for the following reason:

"1. That he has been guilty of neglect of duty; that he has been guilty of the violation of rules; that he has been guilty of neglect and disobedience of orders; and he has been guilty of incapacity, the particulars of which are as follows:

"(a)    That on the 12th day of April, 1965, he was notified at 4:20 A.M. by Kenneth Carmichael, employed as a delivery man for Racer's Bakery, that the east door of the Montpelier High School Building was open and that he should check it and see that it was locked in order to protect and preserve public property. That he refused to, in direct disobedience to the orders given him on numerous occasions by this Chief, and which failure and refusal constituted a neglect of his duties.

"(b)    That on the 2nd day of May, 1965, Harry Ely failed and refused to arrest John Clark, Jr., who he found in an intoxicated condition on a public street in front of Neff's Garage. That instead of arresting the intoxicated person, he called the City Judge out of bed at 3:00 A.M. and wanted to know what to do with him. That such action on his part constituted a neglect of his duties as a police officer and disobedience to orders that had been given to him.

"(c)    That on the 3rd day of June, 1966, John Naab, Principal of the H.G. Morgan Grade School located in the same block as the Police Station, called officer Ely

and requested him to come to the Grade School to settle a disturbance which had been caused by a group of boys cussing the janitor who had asked them not to play ball in front of a glass door. The call was made at 9:10 A.M., and was not answered until 10:25 A.M. by Officer Ely. Officer Ely was requested by Mr. Naab to notify the Chief of Police of this call, and failed to do so. That the actions of Officer Ely constituted neglect of duties and disobedience of orders.

"(d)    That on the 19th day of June, 1965, Officer Ely failed to arrest Winstead Turner for intoxication after he was obviously intoxicated and had been involved in an accident between his truck and an automobile driven by Vonona Spaulding. A number of witnesses all told me that Mr. Turner was intoxicated and that they would file charges against him. Officer Ely made out the accident report, took the keys to Turner's truck and drove away. He was not there when I arrived at the scene in response to a call from Reverend Bob Olson who was a witness to the accident. Mr. Olson signed an affidavit of public intoxication, and I got a warrant from the City Judge. I drove Reverend Olson to his home, and as he was getting out Officer Ely drove up. We then went to the Melody Bar and arrested Mr. Turner. After he was placed in jail I gave Mr. Ely warning that he was neglecting his duties as a police officer and violating the rules. He made no denials at that time. I subsequently learned from Phil Said, an employee of the J & B Chevrolet Sales whose dealer's plates were on the Turner truck, that Officer Ely had called him and wanted to know what to do with the truck. Mr. Said also informed me that while he was trying to give Ely an answer, Officer Ely said 'The Hell with it' and hung up.

"(e)    That on August 6, 1965, I was called by Mable Penrod who informed me that her husband, Virgil Penrod, from whom she was separated, came to her home, knocked on the door and wanted in. She said he was intoxicated, had a shotgun, and told her he was going to kill himself. He wanted her to take the gun and check it and prove it had a shell in it. She refused to do this because she said he was not getting her fingerprints on the gun. She then shut the door. She then said she heard a shotgun blast and heard him fall to the porch and kick around. She said she was extremely scared, and she called the police number and talked to Officer Ely who was on duty and answered the call in approximately 3

or 4 minutes. She said when Ely arrived Penrod was lying on the porch and when he saw Ely he got to his feet and Ely asked him if he was all right. He stated that he was, and Ely started to leave. Mrs. Penrod then asked Ely if he was going to leave the gun, and Ely stated that he did not have a gun. She had him come back up on the porch and check the gun, and Penrod told him he had shot a bird that afternoon. So Mr. Ely turned around and left. Mrs. Penrod said that Officer Ely, when he came to the house, did not talk to her only to say he did not have a gun and then when he came back to check the gun Officer Ely did not suggest to Mrs. Penrod that she had a right to file charges for disorderly conduct nor did he take the gun into his possession to prevent any reoccurrence of this conduct. I warned Officer Ely at this time that he was not conducting himself as an officer should and was neglecting his duty to safeguard the citizens of the community.

"(f)   On September 5, 1965, Arnold Raver called the Police Station at 8:00 P.M. The call light came on, and in five minutes it was turned off, indicating that the call had been taken on the recorder. At the time Mr. Raver called for the police, a car with a colored man and his wife and children in it had broken down in front of Neff's garage. The man had come to the Shell Station, of which Arnold Raver was the proprietor, and Raver had examined the car and told him what the trouble was. The colored man and his family were to wait until somebody came after them to take them home. While they were waiting two cars loaded with men kept driving past the car of the colored man and told him on a number of occasions that they would give him just ten minutes to get out of town. Raver stated that the colored man was scared to death for his children, and asked Raver to call the police. Raver called the Police Station at 8:00 P.M., and, as stated before, the light went off in five minutes, so he told the colored people to sit in the station with him until the police arrived. Raver stated that when he called the station he heard the recording sound and then said "Would you come to the Shell Station." About 8:45 P.M. Harry Ely drove up in front of the Hoosier House, which is just across the street from the Shell Station, and Raver said 'Harry Ely, come over here', and he told him what he wanted. Ely gave no excuse for not answering the call, and Raver was extremely upset because of the state of fear in which the colored man was

in for his children. The call was not reported by Mr. Ely on the log at the Police Station. Such conduct on the part of Officer Ely constituted a neglect of duty and violation of orders.

"(g)   On July 17, 1966, Edna Johnson called the Police Station at 6:25 —M. stating that a car was parked on the sidewalk in front of the Winters' residence and that people were having to walk around it to get past. From her home she could see the car and the City Building. She watched, and Mr. Ely did not answer the call. After she reported this to me, I questioned Mr. Ely about it and he stated that everybody parked on the sidewalk. Such conduct on the part of Harry Ely constituted a neglect of duty and a violation of orders.

"(h)   That on November 8, 1966, Officer Ely, while driving the police car, drove off the side of the road on West Monroe Street in front of the Mary Sutton residence, down into the ditch, and sideswiped a post with the right rear fender. No explanation of this accident other than carelessness or incapacity of the officer in driving was presented by Officer Ely.

"(i)   On December 16, 1966, Officer Ely, while driving the police car, backed such car into a tree at the edge of the parking lot back of the Police Station, damaging the right rear fender.

"(j)   That on January 12, 1967, Officer Ely, while driving the police car, had damage to the hood of the car just above the grill. When I inquired concerning the cause of such damage, he informed me that a Christmas tree had blown on the road in front of him and he had hit it.

"(k)   That on March 4, 1967, I was informed by Mayor Buckmaster that he had called Officer Ely at 8:00 P.M. Mayor Buckmaster called this officer at 9:45 P.M. and stated that his call had not been answered. Officer Ely had failed to turn a switch back that controls the uptown lights. It was later reported to this officer that Officer Ely had told Bob Knox, the owner of a coffee shop, that he had orders to do three things and he intended to ignore all of them. Such conduct constituted gross neglect of duty and violation of orders.

"(l)   That on March 14, 1967, Officer Ely, while driving the police car, backed it into a school bus parked at the rear of the City Building.

"That this officer, as Chief of Police of the City of Montpelier, Indiana, believes that the conduct of Officer

Harry Ely in neglecting his duties in violation of the rules of the department and in his neglect and disobedience of orders and by his obvious incapacity to drive and operate the police car of the City of Montpelier in a safe manner is sufficient grounds for the dismissal of Officer Harry Ely from the Police Force of the City of Montpelier, Indiana, by the Board of Public Works and Safety of such city.

"SIGNED AND DATED this 27th day of March, 1967."

The record shows that on April 5, 1967, at the time and place of the scheduled hearing, the appellant appeared with counsel, participated in the questioning of witnesses, but declined to offer any evidence in his own behalf. At the conclusion of said hearing, the board made the following finding:

"The meeting was called to order by the President of the Board, Mayor Buckmaster, all members being present. The President of the Board announced that the purpose of the meeting was to hold a hearing on the charges which had been filed against Officer Ely. Officer Ely was present in person and by his counsel, David Mosier, of Portland, Indiana. The City Attorney was also present as well as Ann Wittebort, Court Reporter of the Blackford Circuit Court, who was directed to take all the testimony given in shorthand. Evidence was heard. After due deliberation and discussion it was moved, seconded and unanimously passed that the Board find that Harry Ely has been guilty of neglect of duty, of violation of rules, and of neglect and disobedience of orders. Officer Harry Ely should be dismissed from the Montpelier Police Department. There being no further business, the meeting was then adjourned."

Thereafter, the appellant filed his Petition for Judicial Review in the Blackford Circuit Court where the matter was reviewed by the trial court. The trial court, after examining the transcript of the proceedings in the matter of the charges filed before the board against the appellant herein, and after hearing evidence presented by the parties, made the following finding and judgment:

"Cause and evidence having been taken under advisement and considered, the Court now finds for defendant

and against plaintiff, and that defendant did not act with fraud or capriciousness or illegality of order heretofore made by action of Board of Public Works and Safety of defendant city. Finding further that there was substantial evidence to support finding and decision of said Board of Public Works and Safety. Costs against Plaintiff. Judgement on findings."

Thereafter, the appellant filed his motion for new trial, alleging therein that the decision of the Court was contrary to law. In the memorandum in support of the motion, the appellant sets out the nine particulars in which he considers the judgment to be contrary to law, as follows:

"1. That the decision of the Montpelier Board of Public Works and Safety is contrary to law, arbitrary, capricious, fraudulent, illegal and abuse of discretion.

"2. That the Plaintiff was prevented from having a proper hearing before the Montpelier Board of Public Works and Safety.

"3. That the punitive action of the Montpelier Board of Public Works and Safety was unduly severe and a result of arbitrary and capricious action.

"4. That the decision of the Court was not sustained by sufficient evidence.

"5. That by its action, the Defendant City waived all of the charges brought against Plaintiff and that they were estopped from using the charges to dismiss Plaintiff from his position as a police officer.

"6. That there was not substantial evidence to support the findings and action of the Montpelier Board of Public Works and Safety.

"7. That the reasons for the dismissal of the Plaintiff bear no relation to his then abilities to perform his duties as a police officer.

"8. That the charges against Plaintiff were not a matter of record at the time of the order of notice for his hearing.

"9. That the Board of Public Works and Safety did not have proper jurisdiction in their action to dismiss the Plaintiff and therefore the Board did not act within their jurisdiction and discretion."

The motion for new trial was overruled and this appeal followed. The assignment of error on appeal is that the Court

erred in overruling the motion for new trial. In his brief, the appellant withdraws points 4 and 8, set out above, from our consideration.

The tenure of policemen and firemen in the State of Indiana is provided for by a special statute, namely, § 48-6105, Burns' Indiana Statutes. The pertinent parts of said statute are as follows:

"Every member of the fire and police forces, . . . appointed by the mayor, the commissioners of public safety or the board of metropolitan police commissioners, shall hold office until they are removed by said board. They may be removed for any cause other than politics, after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, and after an opportunity for a hearing is given, if demanded, and the written reasons for such removal shall be entered upon the records of such board. On the conviction in any court of a member of the said fire or police force . . . of any criminal offense, or upon a finding and decision of the board that any such member has been or is guilty of neglect of duty, or of the violation of rules, or neglect or disobedience of orders, or of incapacity, or absence without leave, or immoral conduct, or conduct injurious to the public peace or welfare or conduct unbecoming an officer, or other breach of discipline, such commissioners shall have the power to punish the offending party by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him or her to a lower grade and pay."

In reviewing this statute, it is apparent that the legislature intended to protect the tenure of policemen and firemen, especially as against political involvements. Our courts have repeatedly held in interpreting the statute, that it was the intention of the legislature that policemen hold their positions during good behavior and satisfactory performance of their duties. *State ex rel. Felthoff* v. *Richards* (1932), 203 Ind. 637, 180 N. E. 596; *Roth* v. *State ex rel.* (1902), 158 Ind. 242, 63 N. E. 460; *Shira* v. *State ex rel.* (1918); 187 Ind. 441, 119 N. E. 833.

The general rule is well stated in the case of *State ex rel. Felthoff* v. *Richards, supra,* at page 641, wherein our Supreme Court stated:

> "The General Assembly has recognized the sound public policy of retaining in the public service policemen and firemen who have become increasingly valuable by reason of their experience and has, by statute, assured these public servants an indefinite tenure of position during good behavior and satisfactory performance of their duties. In order to protect this tenure of position the General Assembly has provided for a hearing on proper notice for a policeman or fireman under charges.
>
> "The hearing required by law is a fair hearing, one conducted in good faith and dominated solely by a desire to determine the fitness of the person under charges. Further, the notice must apprise the accused of the acts of dereliction or personal defects which constitute the 'cause.' The purpose of the notice is not merely to inform of the time and place of the proposed hearing, but also to disclose the particular act or acts of delinquency or the particular defect constituting incompetency. If the relator was dismissed without 'cause' or if he was dismissed without a fair hearing, then his dismissal was illegal; . . ."

The other side of the coin was succinctly stated by the Supreme Court in the case of *City of Evansville* v. *Nelson* (1964), 245 Ind. 430, 438, 199 N.E. 2d 703, where the Court stated:

> "The purpose of § 48-6105, *supra,* which established a conditional tenure of office in appellee, also provided for the creation of the Commission through which the interest of the public could be protected against the misconduct of such officers. Under the statute, it is obviously intended that police officers be protected in their offices, especially against political involvements, but it is of equal or greater import that the interest of the public be protected by a police department composed of able, dependable and well-disciplined police officers."

The applicable statutes have been held to be both remedial and penal and proceedings for relief accorded thereby to policemen who are wrongfully dismissed or suspended, to be

in the nature of civil proceedings. *City of Ft. Wayne* v. *Bishop* (1950), 228 Ind. 304, 92 N. E. 2d 544; *State ex rel. Bradshaw* v. *Probate Ct.* (1947), 225 Ind. 268, 272, 73 N. E. 2d 769; *Indiana State Board, etc.* v. *Davis* (1917), 69 Ind. App. 109, 118, 121 N. E. 142.

Since the statutes are both penal and remedial, it is fundamental that the charges alleged must be full, clear, complete and concise in order that the accused may properly make a defense to said charges. General averments are not sufficient. *Tyron* v. *City of Terre Haute* (1963), 136 Ind. App. 125, 193 N. E. 2d 377.

After reviewing the charges of misconduct against the appellant herein contained in the request for dismissal, we are of the opinion that the charges were sufficiently specific to apprise the appellant of the nature of the charges against him, as well as the particulars thereof as to time and place, in order to inform him in detail of the proof which would be adduced against him.

The appellant did not question the sufficiency of the charges prior to the hearing before the board. Our Supreme Court in the case of *City of Evansville* v. *Nelson* (1964), 245 Ind. 430, 440, 199 N. E. 2d 703, stated:

"Furthermore, the rule is well settled that if the complaint in civil actions fails to state some essential element, the complaint must be tested by demurrer, and if the complaint merely fails to state an essential element of the cause of action with *sufficient certainty,* the defendant's remedy is a motion to make more specific. In either event, if a defendant makes no objection to the form of complaint but, instead, proceeds to hear the cause without challenging the sufficiency thereof, it must be considered that the defendant has waived the alleged deficiencies therein. *Bronnenberg* v. *Goins* (1915), 183 Ind. 225, 108 N. E. 862; The *Indianapolis, Decatur and Western Railway Company* v. *Hood et al.* (1892), 130 Ind. 594, 30 N. E. 705; 23 I.L.E., §§ 231-34, pp. 434-40."

The appellant therefore, cannot now be permitted to complain about the sufficiency of the charges against him.

The evidence adduced at the hearing before the board on the Request for Dismissal, consists of the testimony of ten witnesses and encompasses 44 pages of the transcript. ■ We have examined the evidence, and in our opinion, there was substantial evidence before the board to support its finding and decision. It is only where the evidence is without conflict and can lead to but one conclusion and the trial court has reached the opposite conclusion, that the decision will be set aside on the grounds that it is contrary to law. *Pokraka et al.* v. *Lummus Co.* (1952), 230 Ind. 523, 529, 104 N. E. 2d 669; *Hinds, Executor of Estate of Sickles, Deceased, etc.* v. *McNair et al.* (1955), 235 Ind. 34, 41, 129 N. E. 2d 553.

Moreover, the appellant did not present any evidence to the board in rebuttal. The record reveals that the appellant was served with a notice of the hearing before the board, and that he received a copy of the charges against him. He testified in the trial court that he knew he had the right to subpoena witnesses for the hearing before the board. He was present at the hearing before the board in person, and by his attorney, David Mosier. His attorney cross examined all of the witnesses. His attorney did not request a continuance of the hearing for the purpose of producing witnesses, nor did he indicate that he wished to present any evidence.

Since the appellant was present in person and by his counsel, and chose not to present evidence, he cannot now be heard to complain that he was prevented from having ■ a proper hearing before the board. Our Supreme Court in the case of *In re Lee* (1964), 246 Ind. 7, 198 N. E. 2d 231, stated:

". . . Likewise, in this state, a client is bound by the acts or non-acts of his attorney, . . ., and he cannot accept the benefits thereof and reject the undesirable acts or non-acts of his attorney."

The appellant next urges that the punitive action of the board was unduly severe and a result of arbitrary and capricious action.

The pertinent parts of the statute, Burns' § 48-6105 have heretofore been set out. The statute provides that upon a finding and decision by the board that the member is guilty of certain conduct, that the board may punish him by certain means, including dismissal. Our courts have held that on judicial review, the trial courts do not have the authority to modify the decision of the board with respect to the punishment fixed by the board, in the absence of a finding, *supported by evidence*, of an arbitrary and capricious ruling by that administrative board. *City of New Albany* v. *Whiteman* (1968), 250 Ind. 333, 234 N. E. 2d 646; *City of Anderson* v. *Hadley* (1951), 122 Ind. App. 8, 102 N. E. 2d 385.

On the judicial review in the Blackford Circuit Court, the appellant produced no evidence which would support his allegation of an arbitrary and capricious ruling by the board. There was no conflict in the evidence heard by the board in this case, and the evidence was substantial in support of its order discharging the appellant. The trial court therefore, could not have modified the action of the board.

The appellant next asserts that "the defendant city of Montpelier waived all charges brought against the plaintiff and that they were estopped from using the charges to dismiss plaintiff from his position as a police officer." Appellant's argument is that because a list of his "indiscretions" was maintained by the Chief of Police for a period of two years before charges were brought against him for his dismissal, that the city was guilty of laches and therefore estopped from using these instances of his misfeasance as the basis of the charges for his dismissal.

In our opinion, this argument has no merit. Even if the doctrine of laches and estoppel were applicable to proceed-

ings under this statute, the appellant has not shown how he was injured or prejudiced in the delay of the Board in having a hearing on the charges. The appellant has not shown that any substantial injury was suffered by him because of a mere lapse of time. Such an injury because of delay is an essential element of laches. *Hobart Twp.* v. *Town of Miller* (1913), 54 Ind. App. 151, 102 N. E. 847.

The rule is well stated in 12 I.L.E., *Equity,* p. 305, § 55, as follows:

"Prejudice or injury to the adverse party is an essential element of laches, and equity is slow to apply the doctrine of laches *where there is no change in the situation of the parties to the prejudice of the defendant during the delay."* (Our emphasis)

Indeed, the appellant might have benefited from the delay. The record shows that he had been previously suspended, that he had been many times reprimanded and warned to improve his performance. We can infer therefrom, that but for the forbearance of the Chief of Police and the Board of Public Works, he could have been dismissed before he was.

The appellant next argues that there was not substantial evidence to support the findings and action of the Montpelier Board of Public Works and Safety. We have heretofore stated that after an examination of the testimony of the ten witnesses who appeared before the board, we are of the opinion that the evidence adduced at that hearing was sufficient to support the finding of the board.

The trial court in an "appeal" from an administrative body is limited to a judicial review to determine whether or not the administrative board has stepped outside its fixed authority or jurisdiction, to determine whether there is substantial evidence to support the board's finding, and whether the board has acted arbitrarily and capriciously. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399.

In the case of *City of Evansville* v. *Nelson* (1964), 245 Ind. 430, 443, 199 N. E. 2d 703, 710, our Supreme Court stated:

". . . on review of an administrative act or order where the court is said to hear the matter *de novo,* the burden is on the complainant to establish the invalidity of the administrative action, and, in doing so, the trial court may not merely substitute its judgment for that of the administrative body. It may not interfere with the exercise of discretionary authority of that body, unless it is made to appear that it acted in the exercise of that discretion in an arbitrary, capricious, fraudulent, or otherwise illegal manner. *Pub. Ser. Comm. et al.* v. *City of Indianapolis* (1956), 235 Ind. 70, 131 N. E. 2d 308; *State ex rel. Pub. Serv. Comm.* v. *Boone C. C., etc.* (1957), 236 Ind. 202, 138 N. E. 2d 4; *N.Y.C. & St. L. R.R. Co.* v. *Singleton* (1935), 207 Ind. 449, 190 N. E. 761, cert. denied 296 U. S. 578, 56 S. Ct. 89."

The trial court, on judicial review in this case, found that there was substantial evidence to support the finding and decision of the board, and that the defendant city did not act with fraud or capriciousness or illegality. This finding cannot be disturbed when it appears there was any evidence or legal inferences to be drawn therefrom, which, if believed by the trier of facts, would sustain the verdict or decision. *Kraus* v. *Kraus* (1956), 235 Ind. 325, 132 N. E. 2d 608; *Rowe* v. *Johnson* (1945), 223 Ind. 289, 60 N. E. 2d 529; *Sims* v. *Motor Transport Lines, Inc.* v. *Davis* (1955), 126 Ind. App. 344, 130 N. E. 2d 82.

The appellant next argues that the reasons for his dismissal bear no relation to his then abilities to perform his duties as a police officer.

The reasons before the board for the appellant's dismissal did not concern his "then abilities" to perform his duties, but rather, his disinclination to faithfully discharge those duties. One may have the physical ability to perform duties, but be derelict in the employment of that ability. The evidence before the board indicated that was the case in this instance. The board by unanimous vote found the appellant guilty of

(1) neglect of duty, (2) violation of rules of the department, (3) neglect of orders, and (4) disobedience of orders. The appellant has not contended that the rules and orders which he was found to have violated and disobeyed were arbitrary, capricious, invalid, *or unrelated to the question of his fitness to perform his duties as a police officer* as was the case in *Mobley* v. *City of Evansville* (1960.), 130 Ind. App. 575, 167 N. E. 2d 473, upon which he relies. We are therefore of the opinion that there is no merit in this contention.

Lastly, the appellant argues that "the board did not have proper judisdiction in their action to dismiss the plaintiff and therefore the board did not act within their jurisdiction and discretion." The appellant alleges that he was not properly served with notice of the hearing.

The provisions of the statute, Burns' § 48-6105, concerning notice are as follows:

> "They may be removed . . . after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing. . . ."

The testimony in the record concerning the manner of service of the notice is conflicting. Harry Ely, the appellant herein, testified as follows:

"Q. Would you please identify what is marked for identification as 'Plaintiff's Ex. 1' for the Court?

A. Yes.

Q. What is that?

A. That's the notice of the hearing.

Q. Did you receive this?

A. No, I didn't receive it. I had to take it.

Q. How did it come into your possession?

A. It was placed over the windshield visor in the police car, and I was told where it was at.

Q. You went and got it?

A. I got it.

Q. And you read it?

A. I read it."

On cross examination, Harry Ely testified as follows:

"Q. Isn't it a fact that Mr. Powell read to you the notice of hearing?

A. No, I don't think so.

Q. Out in front of your house?

A. No.

Q. And are you telling this Court that Mr. Powell did not read to you the notice of hearing out in front of your house?

A. As I remember, the charges and all were in a sealed envelope, and it was placed back of the sunvisor, and I got them myself.

Q. You got them and read them?

A. That's right.

Q. And if Officer Powell would testify that he read this notice to you and handed the request for dismissal to you, would you say he was mistaken?

A. *Not necessarily because I don't definitely remember that—how the notice was—*but as I remember it, the notice was in with the charges." (Our emphasis)

(Tr. pp. 97, 98, and 99.)

Frank Powell, the Chief of Police of the City of Montpelier, testified as follows:

"Q. Now, calling your attention to the question that has arisen concerning the service of the notice on Officer Ely, would you tell the Judge, after you received a copy of the Request for Dismissal and the Notice of hearing, what did you do with them, Mr. Powell?

A. Yes, sir. Officer Ely lived next door to me. I was working the three to eleven trick that evening, and he come on at eleven o'clock. And I drove up in front of his house, which we live side by side, and I waited until he come out, and I said, 'Harry,' I said, 'I've got a thing here that's hard for me to have to do.' But I said, 'I have a notice here for a hearing before the Board

of Works.' I read this hearing to him and presented it to him, setting in the police car in front of his house.

Q. And what was done with regard to the written Request for Dismissal?

A. That's the paper with the notice?

Q. Yes.

A. They were all together. I handed them to him. I didn't read those to him.

Q. I'll hand you 'Plaintiff's Ex. 2' and ask you to examine it.

A. Yes, this is the one that was—

Q. Is this the document that you handed to him?

A. Along with the notice of the hearing.

Q. Okay. What did you do then, Mr. Powell?

A. Well, I turned the car over to Harry, and, my own personal self, I went in the house and I shed some tears, to be honest about it."

(Tr. pp. 121, 122.)

The appellant did not take the stand to rebut the testimony of Frank Powell set out above, concerning the matter of the service of the notice.

Both the Supreme Court and this Court have consistently held that the trial court is the sole judge of the weight of evidence and the credibility of witnesses, and on appeal, the reviewing courts are limited to the record set forth in words and figures on the cold printed pages. It is the trial court who sits in judgment during the course of a trial, hearing the testimony of the witnesses, observing their demeanor, their responses to questions, and in the atmosphere of the court room, determining which testimony to believe or disbelieve, and thus arriving at a decision which the trial court deems fitting and proper. *Berry* v. *Town of Fowler* (1960), 240 Ind. 443, 166 N. E. 2d 233; *Kraus* v. *Kraus* (1956), 235 Ind. 325, 132 N. E. 2d 608; *Hinds* v. *McNair* (1955), 235 Ind. 34, 129 N. E. 2d 533; *Ward* v. *Differding* (1968), 144 Ind. App. 12, 242 N. E. 2d 388; *Hotel and Res-*

*taurant Emp. and Bartenders Intern. Union* v. *Zurzolo* (1968), 142 Ind. App. 242, 233 N. E. 2d 784; *Von der Leith* v. *Young, Admr.* (1965), 139 Ind. App. 525, 212 N. E. 2d 404.

The trial court determined, and we are bound by this determination, that the appellant was served with notice of the hearing. The appellant appeared at the hearing before the board in person and by counsel. Although he chose not to present any evidence, his counsel participated in the hearing by cross examining the witnesses which appeared before the board. He did not object to the proceedings before the board, and he did not at that time claim he had not been served with notice. In his Petition for Judicial Review filed in the trial court, the appellant made no assertion that he was not properly served with notice. We therefore infer from these facts that the appellant was served with the notice in person as testified to by Frank Powell. The appellant having been served with written notice of the hearing, the board had jurisdiction of the appellant at the time it conducted its hearing.

For all of the above and foregoing reasons, the judgment of the trial court must be affirmed.

Judgment affirmed. Costs vs. Appellant.

Lowdermilk, P.J., Carson and Sullivan, JJ., concur.

NOTE.—Reported in 253 N. E. 2d 286.