RICHARD BELLAM v. CITY OF FORT WAYNE.

[No. 171A18. Filed October 26, 1971. Rehearing denied December 3, 1971. Transfer denied April 5, 1972.]

*Jerrald A. Crowell, Bowman, Crowell & Swihart,* of Fort Wayne, for appellant.

*Philip A. Davidson,* of Fort Wayne, for appellee.

SHARP, J.—The appellant, Richard Bellam, was a member of the police department of the City of Fort Wayne. The Chief of Police filed a verified petition for removal and dismissal of Richard Bellam from the Police Department with the Board of Public Safety. The verified petition charged Richard Bellam with conduct unbecoming an officer in that on August 30, 1969 he assaulted one Rebecca A. Andrews in violation of the Rules of the Fort Wayne Police Department. A hearing was held by the Board of Public Safety and Bellam was ordered discharged effective September 10, 1969. On October 8, 1969, he filed his complaint in Allen Superior Court No. 3 for judicial review of such decision. The relevant allegations of his complaint are:

"That the action of the Board of Public Safety of the City of Fort Wayne, in its hearing on September 10, 1969, was arbitrary, capricious, and illegal in each of the following particulars:

(a) That members of the Board conferred privately with the petitioner during recesses in the conduct of said hearing.

(b) That said Board conferred privately with the attorney for the City of Fort Wayne assigned to said hearing during recesses in said hearing.

(c) That the decision of the Board was reached during a discussion which occurred after the Board had indicated its desire that the plaintiff and his attorney leave the hearing room, but at which the Board allowed a newspaper reporter, the petitioner Albert C. Bauermeister, and the attorney for the City of Fort Wayne assigned to said hearing to remain present.

(d) That the evidence before the Board did not sustain any of the charges made against the plaintiff.

"That at the hearing before the Board of Public Safety of the City of Fort Wayne on September 10, 1969, the Board allowed said hearing to be disrupted by the outburst of a person who was not a party or a witness to the proceedings and who made her views present to the Board in unsworn testimony without any action by the Board to eject said person causing such disruption from the hearing room or

to require such person to be placed under oath to repeat her prejudicial allegations against the plaintiff herein."

On October 20, 1969, the City of Fort Wayne filed in the trial court a transcript of the proceedings held before the Board of Public Safety. At the request of appellant, the cause was reopened in the trial court to hear further evidence which included the evidence of the members of the Board of Public Safety and Police Chief. The trial court thereafter entered its findings of fact, conclusions of law and judgment as follows:

## "FINDINGS OF FACT

1. On the 30th day of August, 1969, and some time prior thereto, plaintiff was a police officer in the employ of the City of Fort Wayne, Indiana.

2. On the 8th day of September, 1969, plaintiff was served with a notice to appear before the Board of Public Safety of the City of Fort Wayne, Indiana on September 10, 1969, and with a copy of a verified petition for removal and dismissal of a police officer.

3. On the 10th day of September, 1969, the plaintiff appeared in person and by counsel and evidence was introduced on behalf of the defendant to support the charges set forth in said verified petition.

4. On said day, evidence was also presented on behalf of the plaintiff to rebut the charges set forth in said petition.

5. In said petition, plaintiff was charged with conduct unbecoming a police officer in violation of Rule No. 52 of the Fort Wayne Police Department in that:

(a) On the 30th day of August, 1969, the plaintiff did, in a rude, insolent and angry manner, unlawfully touch, beat and strike the person of Rebecca A. Andrews.

(b) On the 30th day of August, 1969, the plaintiff did threaten the life of Rebecca A. Andrews, and the lives of her children and parents in the event she sought redress for the plaintiff's said misconduct.

6. After the hearing on said charges, the Board of Public Safety found the plaintiff guilty of a violation of Rule No. 52 of the Rules and Regulations of the Fort Wayne Police Department as set forth in rhetorical paragraphs 3 and

3a of said verified petition for his removal and ordered that the plaintiff be dismissed, discharged and removed from the Police Department of the City of Fort Wayne, Indiana.

## "CONCLUSIONS OF LAW

1. The law is with the defendant and against the plaintiff.

2. There was substantial evidence to support the decision of the Board of Public Safety of the City of Fort Wayne to discharge the plaintiff.

3. The decision of the Board of Public Safety of the City of Fort Wayne to discharge the plaintiff was not arbitrary, capricious or illegal.

4. The procedures in the hearing before the Board of Safety of the City of Fort Wayne were regular in all respects and did not vitiate the decision of the Board discharging the plaintiff from the Fort Wayne Police Force.

5. That the hearing afforded to the plaintiff by the Board of Public Safety of the City of Fort Wayne, Indiana did not violate any of the statutory or constitutional rights of the plaintiff."

Appellant's motion to correct errors was overruled and this is the sole error claimed here.

Before the Board, the principal witness against appellant was Rebecca Andrews. Her testimony is summarized as follows:

I am acquainted with Richard Bellam. I saw him on Friday, August 29th, between the hours of 12:00 and 1:00. It was after midnight on Friday. He came in about 11:00 and acted cold and mad, and I asked him what was wrong and he kept saying "nothing, it is O.K." He had just gotten off work at Azar's as a policeman there, and I asked him to go and get something for me to eat before he went home and changed his clothes. He came back about midnight to my apartment on 905 Grace Avenue. He asked whether I had been talking to anybody that he should know about and I said no. He said that I had better start thinking of somebody, and I told him that I hadn't done anything. He slapped me and said that I had better think of something, and then he named a police officer whom I had told

him that I was his girlfriend. And he said that he had spoken to him earlier and he said he saw me, and I asked what was wrong with that. He slapped me three or four times and threw me to the floor and completely ripped the whole front of the outfit I had on, and I kept screaming. He grabbed me around the neck and told me if I screamed anymore or woke the people up that he would kill me, and I told him that they were up because I could hear them walking around and I told him they were going to come downstairs pretty soon. This went on for about an hour and made an awful lot of racket. I told him that I couldn't take it any more and that I couldn't stand living like that and then he left. He made threats to me in the event I told anybody what occurred. He said "Just because I rough you up a little"—but I said, "You call this roughing me up." I was all swollen up and he told me that just because he roughed me up a little bit I shouldn't tell this to anybody or cause any kind of trouble or he would come back and kill me or do something just as bad. He said that he didn't have to do it, that he would find somebody that will. It was late and I didn't call the Police. I called early Tuesday on September 2nd and signed an affidavit in City Court charging him with an offense.

It was about 1:00 or 1:30 P.M. on September 2nd when I called the Police. It was some time after lunch. I have gone with Officer Bellam on occasion socially. I saw him on September 2nd, 1969 when I came downtown to go up to Mr. Hatfield's office. It was probably after 2:00. I had already called Mr. Hatfield and he asked me to come up to his office. When I saw Officer Bellam, he was with the young lady sitting there. Her name is Sue, I think.

On the first occasion when he came to my house, he didn't stay any longer than five or ten minutes. He came back about 45 minutes later and stayed approximately one hour. My eye was black, and my arm and throat. And on my back, I had bruises and my clothes were completely destroyed. I do not have my clothes with me tonight. They are at my house. I didn't receive any medical attention. I don't have any of the bruises now. It has been about 10 days ago when they disappeared. I never told anyone within the last 30 days or so that I would get Mr. Bellam if he broke up with me. I never told anyone that I would burn his uniform and send it to his mother. Once, I told him that I should burn his clothes but I didn't do that. I told my parents that I was going to burn his clothes, and I might have said it to someone else. This beating

was administered with his hands. He hit me with the back of his hand. It did cause a black eye. When I was down, he was kicking me. I know the names of the other people in the building but I didn't go to them for help, and they aren't here tonight. The children did not come out to watch this ruckus that was going on. My children are three and four years old. After he left after the first visit at 11:00 o'clock, I was afraid of him but did not call the Police because he had not done anything wrong, and I did not lock my apartment door. I was going with him all this time, but I was always afraid of him. He was in uniform the first time he came to my house on August 29, 1969.

Several other members of the Fort Wayne Police Department testified for Bellam. Donald Figel, Deputy Chief of Fort Wayne Police testified and his testimony may be summarized:

I served a warrant upon Richard Bellam. At that time, he made a comment that, "this is a bum rap and I will show you why," and he pulled a receipt out of his pocket which I read, and it was a receipt for blood tests from St. Joe Hospital. I asked him what it meant and he said, "It means that myself and this girl have had our blood tests to be married," and he said, "this is the reason I told this girl—this is the reason for my going over to tell her I was going to be married to Suzanne Boerger." He told me that he had been to Miss Andrew's apartment but didn't mention any time.

Officer Bellam worked the night of the 30th. As I recall our conversation, we determined that this happened on the night before he came back to work, which would have been his night off. I don't recall that he said that he was there after midnight. I am familiar with Officer Bellam. I will say that I haven't had any complaints, official complaints about his work. It seems to me that Officer Bellam told me he went over there when he left the job at Azar's and that he took some food over there, but as far as actually mentioning any time I don't recall that. I wouldn't have any reason to dispute Officer Bellam's testimony from my talk with him.

The evidence of Rebecca Andrews and Assistant Chief Figel before the Board was contradicted but it was and is a

substantial foundation for the Board's action. Seven members of the Fort Wayne Police Department testified for Appellant Bellam which included evidence of a so called alibi. Before the trial court members of the Board of Safety expressed the opinion that some of the testimony on behalf of Appellant constituted perjury. The Board had the duty to weigh the evidence and determine questions of credibility, and the trial court on judicial review will not disturb such determinations unless reversible error as a matter of law has been demonstrated.

The proper guideline for review of this case was last stated by Judge Arterburn speaking for our Supreme Court in City by Judge Arterburn speaking for our Supreme Court in *City of New Albany* v. *Whiteman,* 250 Ind. 333, 234 N. E. 2d 646,

"In the case before us the trial court made no finding that the administrative body, the Board of Public Works and Safety, acted arbitrarily or capriciously in fixing the punishment. In fact, it could not have made such a finding, since there was no evidence presented that the action of the Board of Public Works was arbitrary or capricious. However, in its conclusions of law, it made the statement that in its judgment, the punishment meted out by the Board was 'too drastic'. This is purely a substitution of the trial court's judgment for that of an administrative board—the substitution of the judgment of the judicial department for the judgment of the executive department acting through an administrative board. To hold that the trial court, in its own discretion, without a finding supported by evidence of an arbitrary and capricious ruling by an administrative board, may modify and change the punishment fixed by an administrative board would, in fact, turn over to the courts and the judicial department the matter of disciplining a policeman, which, under the constitution, belongs to the executive department of the government.

"If the judicial department, through the trial courts, may, in its discretion, fix the punishment and regulate a police department, the administrative or police board becomes merely an advisory body which would be dominated in its administrative action by the judge of the trial court. . . ."

A broad review of the case law applicable to this case can be found in two recent cases decided by both divisions of this court. See *Ely* v. *City of Montpelier*, 146 Ind. App. 175, 253 N. E. 2d 286 (1969) and *Wiebke* v. *City of Forty Wayne*, 147 Ind. App. 678, 263 N. E. 2d 379 (1970). No good purpose would be served to set forth all the quotations and citations in those cases.

The trial court, on judicial review in this case, found there was substantial evidence to support the finding and decision of the Board of Public Safety. This finding cannot be disturbed when it appears there was any evidence or legal inferences to be drawn therefrom which would sustain the decision of the trial court. Such is the case here.

This review is brought under the provisions of Ind. Ann. Stat. § 48-6105 (Burns 1963), I.C. 1971, 18-1-11-3. The legislative purpose of that statute was well stated by our Supreme Court in *City of Evansville* v. *Nelson*, 245 Ind. 430, 199 N. E. 2d 703, 708 (1964) as follows:

> "The purpose of sect. 48-6105, supra, which established a conditional tenure of office in appellee, also provided for the creation of the commission through which the interest of the public could be protected against the misconduct of such officers. Under the statute it is obviously intended that police officers be protected in their offices, especially against political involvements, but it is of equal or greater import that the interest of the public be protected by a police department composed of able, dependable and well-disciplined police officers."

The Appellant claims no error with regard to the sufficiency of the charges against him, of the notice of the hearing nor of the findings and order of the Board.

In the trial court, it was stipulated that Appellant remained in the room with members of the Board while a recess was held in the proceedings before it, that the Board conferred privately with their attorney and the decision was reached by the Board after it indicated its desire that Appellant and his

attorney leave the hearing room at which the Board allowed a newspaper reporter, the petitioner and city attorney to remain present.

The practice of excluding the appellant and his attorney from deliberations while permitting a person not directly involved in the proceedings to remain represents extremely poor practice even given the informality of practice before many local administrative agencies. We do not want this opinion construed as a general approval of such practice. Appellant relies upon *Eldridge* v. *Board of Zoning Appeals of Noblesville,* 146 Ind. App. 511, 256 N. E. 2d 704 (1970). In that case no effort was made to controvert the prejudicial effect of the Board Chariman's conduct. Here the matter was thoroughly aired before the trial court. The trial court made a specific finding based on the evidence that the conduct of the Hearing by the Board of Public Safety was not prejudicial to the statutory and constitutional rights of the Appellant. We have been shown no basis to reverse that decision as a matter of law. We cannot say as a matter of law, in this case, that the Appellant was not given a full and fair hearing as contemplated in Ind. Ann. Stat. § 48-6105 (Burns 1963), I.C. 1971, 18-1-11-3.

Appellant's counsel has framed a very forceful and artful factual argument in this case. The organization and presentation of this factual argument are very well done. However, this argument was not persuasive to the Board of Public Safety or to the trial court, and we will not disturb their decision. See *Lloyd* v. *City of Gary,* 214 Ind. 700, 17 N. E. 2d 836 (1938).

The appellant has failed to demonstrate reversible error as a matter of law. Therefore, the decision of the trial court should be and hereby is affirmed.

Hoffman, C. J., Staton and White, JJ., concur.

NOTE.—Reported in 274 N. E. 2d 274.