**Jerry Lynn KOENEMAN, Appellant (Defendant Below),**

v.

**CITY OF NEW HAVEN, Appellee (Plaintiff Below).**

No. 02A03–8609–CV–281.

Court of Appeals of Indiana, Third District.

April 30, 1987.

Rehearing Denied June 8, 1987.

Howard S. Grimm, Jr., John M. Haecker, Fort Wayne, for appellant.

Cornelius B. (Neil) Hayes, Sp. City Atty., Hayes, Swift and Finlayson, Fort Wayne, for appellee.

STATON, Judge.

Jerry Lynn Koeneman was dismissed from his employment with the New Haven Police Department by a decision of the Board of Public Works and Safety of the City of New Haven. Koeneman appealed

this decision to the Allen Circuit Court, which affirmed, and Koeneman now appeals the trial court's affirmance. He raises two issues for our review, which we divide further and restate as follows:

I. Were the Board's findings of fact sufficiently specific?

II. Did the Board's prior knowledge of the allegations against Koeneman, obtained when the New Haven chief of police sought the Board's approval to have the Allen County Sheriff's Department investigate the allegations, prejudice Koeneman?

III. Did Koeneman's "Administrative Suspension Hearing," conducted by the New Haven Police Department, prejudice him?

We affirm.

■ Koeneman was employed as a police officer by the City of New Haven in March of 1976. He was dismissed on December 21, 1985, after an administrative hearing before the Board of Public Works and Safety of the City of New Haven. Koeneman obtained judicial review, and the trial court ordered the Board to submit Special Findings of Fact upon its record, citing the reasons for Koeneman's dismissal. In these special findings, the Board found that Koeneman had fondled a young girl, S.H., on several occasions, from the time she was five until she was seven. When S.H. reached the age of seven, Koeneman began having sexual intercourse with her, the last incident being when she was twelve or thirteen. On one occasion, when S.H. was twelve or thirteen years old, Koeneman had sexual intercourse with her and then urinated on her. As a consequence of these acts, the Board found that Koeneman had violated Rule 50–H, *Conduct Unbecoming an Officer,* of the Rules and Regulations of the New Haven Police Department. Rule 50–H prohibits the following:

> Any other act or conduct which is unethical or tends to debase, ridicule, disgrace or degrade the officer or the department or otherwise creates disrespect for law and order.

Koeneman challenges these findings, arguing that Ind.Code 36–8–3–4(e) requires the Board to state in its findings of fact its reasons for dismissing him rather than suspending or demoting him. The statute reads as follows:

> The reasons for the suspension, demotion, or dismissal of a member of the police or fire department shall be entered as specific findings of fact upon the records of the safety board.

We do not read in this statute any requirement that a safety board specify its reasons for imposing one discipline rather than another, nor has Koeneman cited for us any caselaw supporting such an interpretation.

The purpose of specific findings, as required by IC 36–8–3–4(e), "is to provide for meaningful judicial review while limiting the possibility that the reviewing court will reweigh the evidence before the agency." *State ex rel. Miecznowski v. City of Hammond* (1983), Ind.App., 448 N.E.2d 1239, 1244. Specific findings also help ensure careful administrative consideration and assist parties in planning for rehearings and judicial review. *Perez v. United States Steel Corp.* (1981), Ind.App., 426 N.E.2d 29, 31.

■ Koeneman argues that the Board's findings are not sufficient to provide meaningful judicial review, comparing them to findings which were held insufficient in *Yunkers v. Porter County Sheriff's Merit Bd.* (1978), 178 Ind.App. 364, 382 N.E.2d 977. We fail to see the comparison. The only finding in *Yunkers* was a citation to the rules and regulations found to have been violated. In this case, the Board made detailed findings concerning numerous instances of child molesting, whereby Koeneman was determined to have violated a prohibition against conduct disgracing himself or the police department. These findings were sufficiently specific.

In conjunction with his argument that the Board's findings were insufficient to provide for meaningful judicial review, Koeneman suggests that the trial court did, in fact, reweigh the evidence before the

Board. He does not, however, raise or argue that matter as a separate issue. Koeneman's argument is without merit. Rather than affirming the Board's finding that he had violated Rule 50–H, Koeneman argues that the trial court reweighed the evidence and made a new finding that he had violated Rule 43, prohibiting immoral conduct. The finding with which Koeneman takes issue is No. 36, which reads as follows:

That the evidence supports the findings and decision of the Board that Petitioner knowingly violated rules, engaged in immoral conduct, and conduct injurious to the public peace and welfare.

(Record, at 295). This is not a new finding at all; it is consistent with the Board's finding that Koeneman violated Rule 50–H and is merely a different way of stating it.

## II.

### Prior Knowledge of Allegations

When S.H. made her complaint against Koeneman, Chief Herbert Baatz of the New Haven police department approached the Board to ask its permission to have the Internal Affairs Division of the Allen County Sheriff's Department conduct an investigation. Chief Baatz testified that he did this because his department had not previously encountered a complaint of a sensitive nature involving one of its officers. The Board gave Chief Baatz its approval, and the investigation was conducted.

■ The fact-finding process of an administrative body should be free of suspicion or even the inference of impropriety. *Atkinson v. City Of Marion* (1980), Ind. App., 411 N.E.2d 622. Koeneman argues that the Board's prior knowledge of the allegations against him prejudiced him, because he could not object to the manner in which the allegations were presented to the Board in this encounter, nor could he benefit from representation by legal counsel. Nothing in the record, however, indicates that Chief Baatz did anything more than state what the allegations were and request that the Allen County Sheriff's Department be allowed to investigate them rather than the New Haven police depart-

ment. There is no indication that he commented on the validity of the allegations. We do not find that the Board's prior knowledge of the allegations against Koeneman, without more, prejudiced him.

■ Koeneman further argues: because the Board had approved the investigation, at the administrative hearing, it was in the position of reviewing the correctness of its own prior decision, to his prejudice. That is not what happened at all. Chief Baatz asked the Board to approve an unusual procedure—having another police department investigate allegations against one of New Haven's officers. He did not ask the Board to determine whether the allegations warranted an investigation at all. Before the administrative hearing, the Board had not passed upon the validity of the allegations against Koeneman. The Board's fact-finding capabilities were not in any way compromised by this prior involvement in the case. *See City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 310 N.E.2d 65, 71.

## III.

### "Administrative Suspension Hearing"

■ On December 5, 1985, within a month after S.H. first complained to the New Haven Police Department about Koeneman, he was suspended with pay. On December 17, over Koeneman's objection, an "administrative suspension hearing" was held to determine whether his suspension should continue and, if so, whether it should be with or without pay. At Koeneman's later hearing before the Board, Chief Baatz testified that such a hearing was required by *Cleveland Bd. of Educ. v. Loudermill* (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, to provide Koeneman with due process of the law, because he faced the possibility of suspension without pay.

At the beginning of his hearing before the Board, Koeneman polled its members to determine whether any of them knew about the prior suspension hearing. None did. During his cross-examination of Chief Baatz, Koeneman's attorney questioned him about the prior hearing. On re-direct

examination, the City's attorney questioned Chief Baatz as to the results of the hearing, over Koeneman's objection.

Koeneman now argues that the "administrative suspension hearing" deprived him of his due process rights, because the admission of the results into evidence at his later hearing before the Board biased the Board against him. This argument is without merit. The suspension hearing was held for Koeneman's benefit, to afford him due process of the law. When he polled the Board, its members indicated that they had no knowledge of the prior hearing. The City did not attempt to elicit testimony concerning the results of the hearing until Koeneman opened the door in his cross-examination of Chief Baatz. Koeneman cannot argue that he was denied due process because of a hearing held to afford him due process, which he himself brought to the Board's attention, and the results of which were not offered into evidence until he opened the door.

We affirm.

HOFFMAN and SULLIVAN, JJ., concur.