Robert THORNBERRY,
Appellant–Plaintiff,

v.

The CITY OF HOBART, Indiana,
Appellee–Defendant.

No. 45A03–0707–CV–351.

Court of Appeals of Indiana.

May 27, 2008.

James A. Greco, Merrillville, IN, Attorney for Appellant.

John P. Bushemi, John P. Bushemi & Associates, Merrillville, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

■ Appellant-plaintiff Robert Thornberry appeals the trial court's grant of summary judgment in favor of appellee-defendant City of Hobart (Hobart) regarding the termination of his employment with the Hobart Police Department (Police Department). Specifically, Thornberry argues that the grant of summary judgment was erroneous because the designated evidence established as a matter of law that Hobart violated certain provisions of the Open Door Law[1] with regard to the termination proceedings and because there were genuine issues of material fact as to whether Thornberry was properly notified that his leave under the Family Medical Leave Act[2] (FMLA) would run concurrently with his paid leave that Hobart provided. Moreover, Thornberry argues that the Hobart Public Works & Safety Board's (Board) decision to terminate his employment was arbitrary, capricious, and not supported by sufficient evidence. Finding no error, we affirm the judgment of the trial court.

## FACTS

In October 1988, Hobart hired Thornberry to serve as a police officer. Between January 1, 2004, and October 28, 2004, Thornberry exhausted his available days of paid leave. Hobart provides members of the police department who have been employed for at least fifteen years with twenty-five days of paid vacation, eight paid holidays, four paid personal leave days, and forty-five days paid leave for sickness or disability on an annual basis. Hence, Thornberry was entitled to eighty-two days of paid leave per year.

At some point, Thornberry began to suffer from debilitating headaches that are commonly referred to as "cluster headaches." Tr. p. 365, 423. The headaches rendered Thornberry unable to perform his duties at times. Because he was about to exhaust the eighty-two days of paid leave permitted under Hobart's policy, Thornberry requested additional leave under the FMLA. In response to that request, Police Chief Brian Snedecor provided Thornberry with a form stating that although he was eligible for FMLA leave, the accrued paid city leave would be sub-

---

1. Ind.Code § 5–14–1.5–1 et seq. The purpose of the Open Door Law is to ensure that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed. *Gary/Chicago Airport Bd. of Auth. v. Maclin,* 772 N.E.2d 463, 468 (Ind.Ct.App.2002).

2. The FMLA requires covered employers to provide up to twelve weeks of unpaid, job-protected leave to eligible employees for certain family and medical reasons. *See generally* 29 U.S.C. § 2611.

stituted for unpaid leave under the FMLA. In essence, Thornberry's leave was to be calculated based upon a rolling twelve-month period, commencing on October 29, 2004. As a result, Thornberry was entitled to twelve weeks of intermittent FMLA leave between October 29, 2004, and October 28, 2005, to run concurrently with any paid city leave to which he was entitled.

Between October 29, 2004, and December 31, 2004, Thornberry used seventeen days and seven hours of FMLA leave. Additionally, between January 1, 2005, and July 18, 2005, Thornberry used another forty-three days of FMLA leave, thereby exhausting his sixty days under the FMLA. Between January 1, 2005, and September 8, 2005, Thornberry used all forty-five sick/disability days, four personal days, twenty-five vacation days, and seven holidays. As a result, Thornberry exhausted his paid city leave days for the 2005 calendar year. In sum, between October 29, 2004, and September 8, 2005, Thornberry took ninety-eight days of leave from work—ninety-one of which were paid. However, not all the days off work were for the health condition that entitled Thornberry to leave under the FMLA. For instance, on January 14, 2005, Thornberry used a sick day because he had the flu. Also, between May 2, 2005, and May 13, 2005, Thornberry was on vacation with other members of the Police Department. These two absences totaled eleven days that did not qualify as leave under the FMLA.

Between June 30, 2005, and August 22, 2005, Thornberry was absent from work for twenty-nine days. Those days were directly related to the cluster headaches. Sometime in early August 2005, Lieutenant Rick Zormier, the Police Department's legal affairs officer, advised Thornberry that his sick leave would expire on August 22, 2005. As a result, Thornberry had to use his remaining vacation and personal leave days if he was unable to return to work. During that same conversation, Lieutenant Zormier advised Thornberry that his vacation and personal leave days would expire on September 7, 2005. Because Thornberry was unable to return to work after August 22, 2005, in light of his health conditions, he used his remaining thirteen vacation days between August 22, 2005, and September 8, 2005, because his physician had not released him to return to work.

On September 12, 2005, Lieutenant Zormier informed Thornberry that all of his leave time had expired on September 7, 2005, and that only the Mayor could extend his leave. However, Thornberry did not make such a request.

Because Thornberry's leave was exhausted on September 8, 2005, he was required to return to work the next day. However, Thornberry failed to report for duty on September 9, 12, or 13, 2005, the week of September 19, 2005, or the week of September 26, 2005. Moreover, Thornberry had not received a medical release from his physician. A Police Department Order provided that an employee who has been absent for more than three consecutive working days due to illness or injury is prohibited from returning to duty without a doctor's release for work.

As a result of Thornberry's continued absences, on September 30, 2005, Police Chief Brian Snedecor filed disciplinary charges with the Board, requesting the termination of Thornberry's employment from the Police Department. It was alleged that Thornberry had violated the provisions of Indiana Code section 36–8–3–4(b)(2)(E), regarding a police department's "absent without leave" policy. As a result, the Police Department sought Thornberry's dismissal pursuant to

Indiana Code section 36–8–3–4 because Thornberry had violated the attendance rules.

Based on those charges, the Board held evidentiary hearings on November 15, 2005, November 21, 2005, and December 20, 2005. On January 6, 2006, two Board members met at the clerk-treasurer's office and listened to forty-five minutes of the audio taped evidence that had been presented at the prior public hearings. Thereafter, on January 10, 2006, at a public meeting, the Board voted to terminate Thornberry from the Police Department and issued a decision and findings of fact. However, the Public Access Counselor determined that the Board members' January 6, 2006, review of the testimony amounted to an "executive session" that had not been properly "noticed" under the Open Door Law provisions. Appellant's App. p. 153–54, 166. Thereafter, the Board reconsidered the matter at an executive session and a public meeting that was held on March 1, 2006. It is undisputed that notice of those meetings was properly published. Following those proceedings, the Board once again announced its decision to terminate Thornberry. The Board then adopted the same findings that had been previously issued. In part, the findings provided that

4. Corporal Thornberry was absent from work without approved leave commencing on September 9, 2005 and each day thereafter.

. . .

7. Within a few days after the October 8, 2004 written request for FMLA leave was made, Police Chief Snedecor hand delivered to Corporal Thornberry the U.S. Department of Labor Employer Response to Employee Request for Family or Medical Leave form.

. . .

12. The Employer Response Form notified Corporal Thornberry that the City of Hobart would require that he substitute all accrued paid City of Hobart leave for unpaid FMLA leave, i.e. that the 2005 accrued paid City of Hobart leave days under the Working Conditions Ordinance would run concurrently with any 2005 unpaid FMLA leave days.

. . .

20. During the time that Corporal Thornberry's FMLA leave was approaching expiration, Lt. Zormier notified Corporal Thornberry that his last paid City of Hobart sick day was August 22, 2005 and that his remaining paid City of Hobart vacation and personal leave days would run out on September 7, 2005. Lt. Zormier also spoke with Corporal Thornberry on September 12, 2005 and reminded him that his FMLA leave was exhausted as of September 8, 2005. At that time, Corporal Thornberry stated to Lt. Zormier that he was still not released by his doctor to return to work and therefore, could not report for duty.

. . .

22. If Corporal Thornberry called off work for the flu or some non-FMLA serious health condition, this was not on his absence records and the only such non-FMLA serious health condition absence occurred on January 14, 2005.

23. The Hobart Police Department listing of FMLA leave days taken by Corporal Thornberry in 2004 and City of Hobart accrued paid leave/FMLA leave days taken by Corporal Thornberry in 2005 . . . lists eighty-one (81) accrued City of Hobart paid leave/FMLA leave days

used during 2005 as of September 9, 2005, excluding one (1) day (January 14, 2005) when Corporal Thornberry was sick with the flu.

. . .

30. Corporal Thornberry was aware his FMLA leave was about to end as of September 9 as stated by Lt. Zormier.

Tr. p. 34. Based upon these findings, the Board decided:

1. Corporal Robert Thornberry was absent from work without approved leave commencing on September 9, 2005.

2. Corporal Thornberry failed to report for duty commencing on September 9, 2005.

*Id.* As a result, the Board terminated Thornberry's employment effective September 9, 2005.

Thereafter, on February 7, 2006, Thornberry filed a verified complaint in the trial court, claiming that the Board's action in terminating his employment was void because "the Board had deliberated upon the evidence in private without proper notice prior to the meeting on January 10, 2006, in violation of [the Open Door Law]." Appellant's App. p. 25. Thornberry also requested, among other things, that he be reinstated because the decision to dismiss him from employment was arbitrary and capricious and the decision to terminate his employment was not supported by the evidence.

On December 21, 2006, Thornberry filed a motion for partial summary judgment, claiming that he was entitled to reinstatement as a matter of law in light of the Open Door Law violation. Thereafter, Hobart filed its motion for summary judgment, claiming that it was entitled to judgment as a matter of law because the designated evidence established that Thornberry "failed to report for duty after his allotted leave came to an end." *Id.* at 85.

Following argument on the summary judgment motions, the trial court issued an order granting—in part—Thornberry's partial summary judgment motion. In essence, the trial court determined that the Board committed a technical violation of the Open Door Law. However, the trial court denied the remainder of Thornberry's motion regarding his contention that such a violation necessarily voided the Board's subsequent action in terminating Thornberry's employment. As a result, the trial court granted Hobart's motion for summary judgment and upheld the Board's decision to fire Thornberry. Thornberry now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that summary judgment is appropriate only if the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Bowman ex rel. Bowman v. McNary*, 853 N.E.2d 984, 988 (Ind.Ct.App. 2006). We must construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court, and we must carefully review the decision on such motions to ensure that parties are not improperly denied their day in court. *Id.* All trial court rulings should be presumed to be correct, but in the context of summary judgment proceedings we will not hesitate to reverse a trial court's ruling if it has misconstrued or misapplied the law, failed to consider material factual disputes, or improperly considered immaterial factual disputes. *Id.*

## II.  Open Door Law

■ Thornberry first claims that although the trial court properly granted his motion for partial summary judgment, it erred in determining that only a "technical" violation of the Open Door Law occurred.  Appellant's Br. p. 1. As a result, Thornberry contends that the violation should have voided the Board's decision to terminate his employment.

■ The decision whether to declare void any policy, decision, or final action taken by a public agency in violation of the Open Door Law is a matter left to the trial court's discretion.  *Hinojosa v. Bd. of Pub. Works & Safety*, 789 N.E.2d 533, 543 (Ind. Ct.App.2003).  Thus, we will reverse a trial court's determination to void or refuse to void a final action only if the trial court abused its discretion.  *Town of Merrillville v. Blanco*, 687 N.E.2d 191, 199 (Ind. Ct.App.1997).  Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law.  *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993).

■ In determining whether the Board's final action to terminate Thornberry following the January 10, 2006, public meeting should be voided, we look to Indiana Code section 5–14–1.5–7(d) for guidance:

(d) In determining whether to declare any policy, decision, or final action void, a court shall consider the following factors among other relevant factors:

(1) The extent to which the violation:

(A) affected the substance of the policy, decision, or final action;

(B) denied or impaired access to any meetings that the public had a right to observe and record;  and

(C) prevented or impaired public knowledge or understanding of the public's business.

(2) Whether voiding of the policy, decision, or final action is a necessary prerequisite to a substantial reconsideration of the subject matter.

(3) Whether the public interest will be served by voiding the policy, decision, or final action by determining which of the following factors outweighs the other:

(A) The remedial benefits gained by effectuating the public policy of the state declared in section 1 of this chapter.

(B) The prejudice likely to accrue to the public if the policy, decision, or final action is voided, including the extent to which persons have relied upon the validity of the challenged action and the effect declaring the challenged action void would have on them.

(4) Whether the defendant acted in compliance with an informal inquiry response or advisory opinion issued by the public access counselor concerning the violation.

Pursuant to this statute, the burden of proof rests on the plaintiff to establish facts to prove why the final action should be voided.  *Hinojosa*, 789 N.E.2d at 542–43.

In this case, we initially observe that it is undisputed that no final action was taken regarding Thornberry's employment at the executive session on January 6, 2006. As discussed above, two of the Board members met that day and listened to forty-five minutes of audio taped evidence that had already been presented at the public meetings.  Appellant's App. p. 139.

Thornberry has made no showing that Hobart's failure to provide notice of that session denied or impaired public access to that meeting. Moreover, Indiana Code section 5–14–1.5–6(A) provides that an executive session may be held by a public agency to receive information concerning an individual's alleged misconduct. And an executive session has been defined as a meeting from which the public is excluded. I.C. § 5–14–1.5–2(f). Additionally, Thornberry does not claim that the Board's failure to provide proper notice of the January 6, 2006 meeting prevented or impaired public knowledge or understanding of the decision regarding Thornberry's employment. Indeed, as set forth above, the information that the Board members gleaned from that meeting had already been presented at a public meeting, was a part of the public record, and was available for public inspection. In short, the Board members neither received new information nor heard new testimony at the meeting.

We note that final action in the matter was not taken until the January 10, 2006, public meeting, after which signed copies of the approved findings of fact and decision were distributed to the public. Therefore, Thornberry has failed to establish that the trial court abused its discretion in finding that the technical violation of the Open Door Law did not impair public knowledge or understanding of the final action that was taken on January 10, 2006.

Finally, as discussed above, after the public meeting on January 10, 2006, the issue of Thornberry's continued employment was reconsidered at the executive session and public meeting that were conducted on March 1, 2006. It is undisputed that the Board complied with the Open Door Law in conducting the March 1 meeting, and it is apparent that the Board merely took action at that time to correct its previous error. Thus, voiding the final action would merely require the Board to reconsider the same evidence for a third time. And voiding the final action would only serve to impose a punishment at the public's expense for a technical violation of the Open Door Law.

As a result, we conclude that the trial court did not abuse its discretion when it refused to void the Board's final action that was taken at the January 10, 2006, public meeting. Hence, Thornberry does not prevail on this claim.

### III. Hobart's Motion for Summary Judgment

Thornberry next argues that the trial court erred in granting the City's motion for summary judgment. More specifically, Thornberry contends that genuine issues of material fact exist regarding the calculation of his leave time and that the evidence was insufficient for the Board to find: (1) that Thornberry was properly notified that his FMLA leave would run concurrently with his paid city leave; (2) that Thornberry's leave under the FMLA expired on July 18, 2005; and (3) that Thornberry was absent from work without approved leave and failed to report for duty as of September 9, 2005.

In addition to our standard of review set forth above regarding summary judgment, we further note that where procedural requirements are satisfied, a judgment of an administrative board is deemed prima facie correct. *Wiebke v. City of Fort Wayne*, 147 Ind.App. 678, 263 N.E.2d 379, 383 (1970). In an action before the Board of Public Safety pursuant to Indiana Code section 36–8–3–4 regarding the dismissal of a police officer, the Board has the duty to weigh the evidence and determine questions of credibility. *Bellam v. City of Fort Wayne*, 149 Ind.App. 585, 274 N.E.2d 274, 277 (1971). The trial court is not to disturb such determinations unless revers-

ible error as a matter of law has been demonstrated. *Id.*

■■ We also note that Indiana Code section 36–8–3–4(e) requires specific findings of fact be entered by the Board for the purpose of providing for meaningful judicial review while limiting the possibility that the reviewing court will reweigh the evidence before the agency. *Koeneman v. City of New Haven,* 506 N.E.2d 1135, 1137 (Ind.Ct.App.1987). The trial court is limited to a judicial review to determine whether the administrative board has stepped outside its fixed authority or jurisdiction, whether there is substantial evidence to support the board's finding, and whether the board has acted arbitrarily and capriciously. *Ely v. City of Montpelier,* 146 Ind.App. 175, 253 N.E.2d 286, 294 (1969).

■ The burden is on the complainant to establish the invalidity of the administrative action and the court may not interfere with the discretionary authority of the administrative body unless it is established that such body acted in an arbitrary, capricious, fraudulent or otherwise illegal manner. *City of Evansville v. Nelson,* 245 Ind. 430, 199 N.E.2d 703, 709 (1964). The Board's finding "cannot be disturbed when it appears there was any evidence or legal inferences to be drawn therefrom, which, if believed by the trier of fact, would sustain the verdict or decision." *Ely,* 253 N.E.2d at 295.

### A. Calculation of Leave Time

■ In this case, the designated evidence established that Hobart provided Thornberry with twenty-five days of paid vacation, eight paid holidays, four paid personal leave days, and forty-five days paid leave for sickness or disability on an annual basis. Between January 1, 2005, and September 8, 2005, Thornberry used all forty-five sick days, all four personal days, all twenty-five vacation days, and seven holidays.

In accordance with Indiana Code section 36–8–3–4(b)(2)(E), the Board may dismiss a member of the police department upon a finding that the member has been absent without leave. The Board may also dismiss a police officer upon a finding that the police department member has violated the rules. I.C. § 36–8–3–4(b)(2)(B). Indeed, the Hobart Police Department Rules and Regulations require an officer to report for assigned duty punctually unless excused by prior permission from the ranking officer.

Here, the designated evidence established that because Thornberry had exhausted all of his permitted leave, yet was unable to return to work because of his medical condition, he was, in fact, absent without approved leave. Therefore, Thornberry has failed to establish that the Board's actions were arbitrary and capricious on this basis.

### B. FMLA Leave and Paid Leave

■ Notwithstanding the above, Thornberry claims that his dismissal was not warranted in light of section 825.208(c) of the FMLA, which requires an employer to notify the employee within two days if paid leave is to be substituted for unpaid FMLA leave. According to this provision, Thornberry asserts that he was not properly notified that his FMLA leave would run concurrently with his paid leave.

Here, the record shows that although Police Chief Snedecor could not state precisely when the notice was delivered to Thornberry, he testified at the evidentiary hearing on November 15, 2005, that he prepared and delivered to Thornberry the Employer Response Form shortly after receiving Thornberry's October 8, 2004, correspondence requesting FMLA leave. Tr. p. 204. Chief Snedecor further testi-

fied that the Employer Response Form indicated that any paid leave would be substituted for unpaid FMLA leave. *Id.* at 206. Chief Snedecor also acknowledged that the form was provided to Thornberry "within a matter of days" after October 8, 2004. *Id.* at 212, 267, 271. When pressed further, Chief Snedecor stated that he responded to Thornberry "within approximately two days." *Id.* at 271–22.

We also note that Lieutenant Zormier testified that at some point prior to August 22, 2005, he advised Thornberry that his sick leave was to expire on that day, and that Thornberry would be required to use his remaining vacation and personal leave days if he was unable to return to work on August 22, 2005. *Id.* at 108. He also told Thornberry during that same conversation that his leave time would expire on "either September 5 or September 7, 2005." *Id.* at 112. Thereafter, on September 12, 2005, Lieutenant Zormier informed Thornberry that his leave time had expired on September 7, 2005, and only the mayor could extend his leave. In light of this testimony, there was sufficient evidence to support the Board's finding that the Employer Response Form was delivered to Thornberry in a timely fashion and that Thornberry was notified that his FMLA leave would run concurrently with his paid city leave.

■ As an aside, even assuming for the sake of argument that Thornberry had not been properly notified that his FMLA leave would run concurrently with the leave provided by Hobart, the United States Supreme Court in *Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 122 S.Ct. 1155; 152 L.Ed.2d 167 (2002), addressed the notion of holding employers liable for simple administrative oversights:

> Section 825.700(a) [of the FMLA] is also in considerable tension with the statute's admonition that "nothing in this Act . . . shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act." Section 2653. The FMLA was intended to pull certain employers up to the minimum standard, but Congress was well aware of the danger that it might push more generous employers down to the minimum at the same time. Technical rules and burdensome administrative requirements, Congress knew, might impose unforeseen liabilities and discourage employers from adopting policies that varied much from the basic federal requirements.

*Id.* at 95, 122 S.Ct. 1155. In providing additional guidance for interpreting FMLA provisions, the *Ragsdale* Court further explained that a plaintiff must demonstrate specific prejudice that he suffered from a technical, administrative violation of the FMLA in order to prevail on an FMLA claim:

> To prevail under the cause of action set out in section 2617, an employee must prove, as a threshold matter, that the employer violated section 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, section 2617 provides no relief unless the employee has been prejudiced by the violation.

*Id.* at 89, 122 S.Ct. 1155.

In this case, Thornberry has presented no evidence suggesting that Hobart's paid leave policy prejudiced him from receiving the twelve weeks of unpaid leave guaranteed by the FMLA. In any event, as discussed above, sufficient evidence was presented for the Board to determine that Thornberry was adequately notified that his FMLA leave time expired on September 8, 2005, and the trial court did not err in affirming the Board's findings of fact with regard to that issue.

## C. Exhaustion of FMLA Leave

██ Thornberry also argues that the evidence was insufficient to support a conclusion that he had exhausted his leave under the FMLA. Specifically, Thornberry relies on the absence of specific notations by the Police Department designating his 2005 absences as FMLA leave days in his attendance records.

Notwithstanding this contention, Thornberry acknowledged that the sick days documented between June 30, 2005, and August 22, 2005, were the result of the cluster headaches that qualified under the FMLA. Tr. p. 427. During that period, Thornberry missed twenty-nine days of work. *Id.* at 46. Thornberry then used thirteen remaining vacation days through September 8, 2005. *Id.* Thornberry's physician still had not released him to return to work. *Id.* at 437. Moreover, the records generated by the Police Department specifically designate that Thornberry took seventeen days and seven hours of leave after October 29, 2004, for a qualified FMLA health condition. *Id.* at 46. Therefore, according to Thornberry's own testimony, between October 29, 2004, and September 8, 2005, he was absent for fifty-nine days and seven hours as a result of his FMLA health condition. Therefore, it was certainly reasonable for the Board to find that at least one hour of the additional forty days that Thornberry was absent from work was because of his FMLA-qualified health condition. As a result, Thornberry's claim that the evidence failed to establish that Thornberry exhausted his FMLA leave prior to September 9, 2005, fails.

## D. Absence Without Approved Leave Time

██ Finally, Thornberry argues that the grant of summary judgment for the City was erroneous because the designated evidence failed to establish that his absence from the Police Department was without accrued leave time. Notwithstanding this claim, Lieutenant Zormier testified that Thornberry was scheduled to work on the days when leave was not provided. Tr. p. 126. Although Thornberry had the option of requesting additional leave time from the Mayor, he chose not to do so. *Id.* at 67. Thornberry admitted that he did not report for duty on September 9, 2005, September 12, 2005, September 13, 2005, the week of September 19, 2005, or the week of September 26, 2005. *Id.* at 34.

Although Thornberry maintains that he was not ordered to return to work on September 9, 2005, and was not assigned to duty on that day, he acknowledged that Hobart Police Department General Order 93–25 (General Order) prohibits an employee who has been absent for more than three consecutive working days due to illness or injury from returning to work without a doctor's release for work.

As discussed above, Thornberry was absent from duty beginning June 30, 2005, because of the cluster headaches. *Id.* at 437. As of September 8, 2005, Thornberry's physician had still not released him to work because of that condition. *Id.* Therefore, pursuant to the terms set forth in the General Order, Thornberry was prohibited from returning to duty on September 9, 2005, and he could not be ordered to return or assigned to duty on that day.

However, as we have already discussed, the Board found, based upon sufficient evidence, that Thornberry's FMLA leave had expired by that date. Moreover, Thornberry's paid leave through Hobart expired on September 8, 2005. Because Thornberry's available leave was exhausted under both the FMLA and Hobart's leave policy, and since he was unable to return to work according to the terms of

the General Order, the evidence established that Thornberry was absent without leave each day after September 8, 2005.

In essence, to accept Thornberry's argument would conceivably entitle any ill or injured police officer to indefinite leave until released to return to work by his or her physician. To apply the provisions of the FMLA to allow an employee such indefinite leave would fly in the face of the intent of the legislation. As a result, we conclude that there was sufficient evidence for the Board to conclude that Thornberry was absent without leave commencing September 9, 2005. Thus, the Board properly exercised its authority when it terminated Thornberry's employment as of that date, pursuant to Indiana Code section 36–8–3–3 and the Police Department's rules and regulations. Accordingly, we conclude that the trial court properly granted Hobart's motion for summary judgment.

The judgment of the trial court is affirmed.

RILEY, J., and ROBB, J., concur.